1
2
3
4
5
6
7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,

11          Plaintiff,                    CR. NO. S-07-0282 GGH

12      vs.                               ORDER

13   JOSEPH P. CROWLEY and
     MARIA E. STONER,
14

15          Defendants.
                                       /
16   _____

17   *Introduction and Summary*

18          Defendant Joseph Crowley (Crowley), driver of a vehicle stopped on Travis Air

19   Force Base on suspicion of driving under the influence of alcohol, moves to suppress all

20   evidence acquired during and after the stop on the grounds that the officer who initiated the stop

21   lacked a reasonable suspicion to do so.  His co-defendant, Maria Stoner (Stoner), moves to

22   dismiss on the same grounds, and also seeks dismissal of the information because of alleged

23   outrageous government conduct.  The court conducted an initial hearing to determine if an

24   evidentiary hearing was necessary and, if not, whether any of the grounds for

25   suppression/dismissal were meritorious.

26   \\\\\

1   Crowley has been charged with four counts: driving under the influence with an

2   enhancement for having a blood alcohol level of .15% or more (Cal. Vehicle Code §§ 23152(a),

3   23578); driving with a blood alcohol level of .08% with an enhancement for a blood alcohol

4   level of .15% or more (Cal. Vehicle Code §§ 23152(b), 23578); forcible assault etc. (18 U.S.C. §

5   111), and open container in a vehicle (Cal. Vehicle Code § 23223(a)).  Stoner is charged with

6   three counts of forcibly resisting or impeding an officer in the performance of duties, § 111,

7   drunk in public, Cal. Penal Code 647(f), and possession of an open container.

8   Crowley did not initially request an evidentiary hearing; Stoner did.  Crowley

9   rethought his position in the reply brief.   However, neither Stoner nor Crowley produced any

10  facts, much less alleged them with specificity, which would require the court to hold an

11  evidentiary hearing on the suppression motion.  With respect to the motion to dismiss, the

12  government does not dispute the facts upon which Stoner moves – facts which are taken

13  completely from law enforcement reports.  However, questions have arisen in the undersigned's

14  mind by the very presentation of those stated facts, for example, the specific reasons, if any, (as

15  opposed to the general boilerplate safety assertion) why such an intrusive search was thought

16  necessary, whether defendant Crowley was subjected to more than a pat-down search, the precise

17  technique involved in the "bra roll," the elapsed time between certain events and the like.

18  The undersigned denies the motion to suppress of both defendants.  With respect

19  to the motion to dismiss based on outrageous government conduct by defendant Stoner, the

20  undersigned will reserve opinion until the facts at hearing have been presented.

21  *Evidentiary Hearing Requirements*

22  "To mandate an evidentiary hearing [on a motion to suppress], the challenger's

23  attack must be more than conclusory and must be supported by more than a desire to

24  cross-examine." United States v. Marcello, 731 F.2d 1354, 1358 (9th Cir. 1984).

25  We review for an abuse of discretion a court's decision whether to conduct an
    evidentiary hearing on a motion to suppress.  See United States v. Walczak, 783
26  F.2d 852, 857 (9th Cir.1986).  An evidentiary hearing on a motion to suppress

2

need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist.  See id.; United States v. Harris, 914 F.2d 927, 933 (7th Cir.1990); United States v. Irwin, 612 F.2d 1182, 1187 n. 14 (9th Cir.1980); United States v. Carrion, 463 F.2d 704, 706 (9th Cir.1972).  Howell's initial motion seeking an evidentiary hearing plainly did not meet this standard. In his motion before the magistrate judge, Howell identified no facts which, if proved, would allow the court to suppress the confession. To justify his request for an evidentiary hearing, Howell submitted a boilerplate motion that relied wholly on the fact that the government has the burden of proof to establish adequate Miranda warnings.

Based on Howell's conclusory motion, the magistrate judge did not abuse its discretion in refusing to hold an evidentiary hearing.  See Harris, 914 F.2d at 933 ("A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one.  Rather, the defendant must demonstrate that a 'significant disputed factual issue' exists such that a hearing is required.") (citation omitted).

United States v. Howell, 231 F.3d 615, 620-621 (9th Cir. 2000).

See also United States v. Barajas-Romo, 2008 WL 187388 (9th Cir. 2008) (no evidentiary hearing required where defendant failed to file an affidavit positing facts which justified his allegations on motion to suppress).

With respect to the motion to suppress, defendants provided no proffer of facts which would contradict anything presented by the government.  Indeed, defendant Crowley supplied a police report with his briefing and based his factual presentation on those very facts. Defense counsel so much as admitted that the reason an evidentiary hearing was requested was their belief that they had a right to cross-examine prior to trial whenever a motion to suppress was made.  Even with respect to the not-very-disputed police officer status of the first observing officer, Mahaffy, counsel for Stoner resists positing any facts of which he is aware after investigation to indicate that Mahaffy was not in reality an off-duty military police security officer, but simply asserts that his present lack of confirmed knowledge is sufficient to require an evidentiary hearing.  On the contrary, as set forth above, evidentiary hearings are not granted on the basis of speculation, "I don't knows," or a desire for pretrial discovery.  They are granted when specific, factual allegations are made which contradict the government's position, or at the

3

1   very least, require supplementation before a ruling can be made.

2            Therefore, the facts upon which the motion to suppress (as opposed to the motion

3   to dismiss) will be granted are those facts initially presented by defendant Crowley as

4   supplemented by the government.  Again, defendant Stoner presented no facts in regard to the

5   suppression motion, or even specific, good faith factual assertions, which would materially

6   dispute any of the above derived facts.

7            Two other issues deserve mention in this section.  First, defendant Crowley takes

8   the position that the government's brief was untimely, and hence no facts presented by the

9   government may be considered.  However, the docket reflects that upon request the court

10   approved an extension of time for the filing of the government opposition which would make the

11   brief and declarations timely.

12            Secondarily, defendant Stoner belatedly objected to use by her co-defendant and

13   the government of a police report attached to defendant Crowley's motion.  Though the Federal

14   Rules of Evidence generally apply at pretrial suppression hearings, <u>United States v. Brewer</u>, 947

15   F.2d 404, 410 (9th Cir. 1991), "the rules of evidence normally applicable in criminal trials do not

16   operate with full force at hearings before the judge to determine the admissibility of evidence."

17   <u>United States v. Matlock</u>, 415 U.S. 164, 172-73 (1974) (footnote omitted).  A judge may

18   consider hearsay evidence to determine if probable cause existed to arrest a defendant.  <u>Matlock</u>,

19   415 U.S. at 175.

20            Ordinarily, police reports are inadmissible in criminal actions to prove the facts

21   stated therein.  Fed. R. Ev. 803(8).  However, defendant Crowley attached Mahaffy's police

22   report to his suppression motion and relied upon it as *the* facts upon which the suppression

23   motion should be made.  Certainly, Crowley cannot object to use of the police report as the facts

24   to be utilized by the court.

25            In any event, defendants again misapprehend their production burden on a motion

26   to suppress.  Excluding the Mahaffy police report leaves the court with the facts submitted in the

4

1   Trojanowski declaration which provide: "On November 12, 2006, at about 1400 hours an off

2   duty security forces member (MAHAFFY) telephoned Security Forces Control Center (SFCC) to

3   report that he witnessed two individuals drinking alcohol inside a vehicle [describing the

4   Crowley and Stoner vehicle]....  Defendants cannot simply assert: they do not like these facts;

5   defendants must provide some evidence to materially dispute them so as to call for an evidentiary

6   hearing.  Indeed, the suppression motion is over if only the facts asserted in the Trojanowski

7   declaration are considered by the court. [1]

8   *Discussion*

9           A. Motion to Suppress

10                  There are no material issues of fact *presented by the parties* which would

11  influence the ruling on the motion to suppress.  The relevant facts, taken from *defendant*

12  *Crowley's* motion and attachment, as supplemented by the government supplied declaration, are

13  as follows.

14                  On November 12, 2005, Security Forces Officer Mahaffy who was off duty at the

15  time,[2] noticed what he believed to be two persons in a red Mustang imbibing in alcoholic

16  beverages.  Specifically, as set forth in the report attached to and adopted by defendant Crowley

17  in his motion to suppress:

18          MAHAFFY stated he was going through the drive through at the base Burger
            King on 12 November 2006 [[3]] at about 1415 hours.  MAHAFFY stated he saw a
19          female  passenger inside a red Ford Mustang drinking what he believed to be an
            alcoholic beverage.  MAHAFFY stated that he saw the female passenger finish a
20          bottle of what he believed to be an alcoholic beverage, and place the empty bottle
            behind the driver's seat of the Mustang.  MAHAFFY stated he saw the female
21          passenger grab two more bottles of what he believed to be an alcoholic beverage,

22  ─────────────────

23          [1] As an aside, defendant Stoner's objection to use of the police report is hollow in that
    she herself submits a police report as the facts upon which the court should grant the motion to
    dismiss for outrageous government conduct.
24
            [2] No factual dispute has been presented to counter Officer (Staff Sergeant) Trojanowski's
25  recitation that Mahaffy was an off duty "security forces member."

26          [3] The previous reference in the report to 2005 is obviously a typographical error.

and gave one to the male driver.  MAHAFFY stated that the two occupants of the Mustang opened the bottles, toasted, and then drank from the bottles.  MAHAFFY stated  he followed V-1 until it was stopped by a security forces member.

Defendant Crowley's Attachment A.

Mahaffy telephoned Security Forces Control Center (SFCC) and Officer Trojanowski was dispatched to respond to Mahaffy's report that he had witnessed two individuals drinking alcohol in the red Mustang (license number CA 5GAM576).  Trojanowski Declaration at 1.  Again, as proffered by defendant Crowley in his motion to suppress:

> The SFCC told me that MAHAFFY was following V-1, and V-1 had stopped at the Travis skate board park.  The SFCC told me that V-1 had left the skate park, and was traveling south bound on Cannon Dr. while I was in route to the skate park.
>
> I was traveling north bound on Cannon Dr. South of the skate park, and I saw a red Ford Mustang traveling south on Cannon Dr.  I noticed the Ford Mustang matched the description of V-1.  I made a U-turn and got behind the Ford mustang.  I ran V-1 through the [CLETS], and discovered it was registered to subject #2 STONER.
>
> The driver of V-1 activated the vehicle's left turn indicator, as V-1 approached the intersection of Cannon Dr., and Travis Ave.  V-1 stopped for a red light in the lane designated for southbound (straight) traffic, then the driver deactivated V-1's turn indicator.  V-1 proceeded straight through the intersection onto Ragsdale Rd. I activated my emergency lights to initiate a traffic stop.  V-1 did not stop and proceeded south on Ragsdale  Rd.  I activated my sirens several times, but V-1 did not stop.  V-1 pulled into the left hand turn at the intersection of  Ragsdale and Hickam Ave, and stopped for a red light.  V-1 made a left turn onto Hickam Ave when the light turned green.  I activated my siren again as V-1 proceeded through the intersection, and again V-1 did not stop.  V-1 then made a left turn into the BX parking lot, and stopped.

Defendant Crowley's Exhibit A.

Neither of the defendants have proffered any facts at odds with the above rendition, and the court finds them to be without substantial dispute.  Subsequent facts about the initial contacts, field sobriety test and so forth are not pertinent to the motion to suppress.

Three discrete scenarios exist under the facts set forth above concerning "reasonable suspicion":

1. Sufficient facts existed by virtue of Officer Mahaffy's observations and reporting;

2. Sufficient facts came into being when the possibility of temporary flight or refusal to stop are

considered;

3. The failure to quickly stop after emergency lights and sirens were activated is a new crime

which eviscerates any alleged lack of reasonable suspicion prior to that time.

The undersigned finds that all three scenarios justified the stop.

Both defendants claim that the off-duty officer lacked the reasonable suspicion of

Crowley's driving under the influence necessary to validate the traffic stop.  See United States v.

Choudry, 461 F.3d 1097, 1100 (9th Cir. 2006) (setting forth the reasonable suspicion standard for

traffic stop).  Of course this standard is of lesser stringency that the probable cause standard

necessary for arrest of the defendant.

> Officers have reasonable suspicion when "specific, articulable facts ... together
> with objective and reasonable inferences, form the basis for suspecting that the
> particular person detained is engaged in criminal activity." Id. at 1105 (internal
> quotation marks omitted). The reasonable suspicion analysis takes into account
> the totality of the circumstances.  United States v. Montero-Camargo, 208 F.3d
> 1122, 1129 (9th Cir.2000) (en banc).

Id.

Despite defendants' protests that law enforcement should not be given any more

deference in their observations than the ordinary lay citizen: "'*This process allows officers to

draw on their own experience and specialized training to make inferences from and deductions

about the cumulative information available to them.*" United States v. Arvizu, 534 U.S. 266,

273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)." Id. (emphasis added).[4]  Although defendants make

the mere speculative complaint that they do not know about Officer Mahaffy's personal

experience, defendants proffer no facts to suggest that he lacks sufficient experience common to

law enforcement officers.  Again, defendants do not have the right to pre-trial cross-examination

---

[4]  "In such cases, the Supreme Court directs us to give due weight to the factual
inferences drawn by law enforcement officers, United States v. Arvizu, 534 U.S. 266, 277, 122
S.Ct. 744, 151 L.Ed.2d 740 (2002), and has noted that officers may make reasonable deductions
and inferences based on their experience and specialized training that 'might well elude an
untrained person.' Id. at 273, 122 S.Ct. 744 (internal quotation marks omitted)." United States v.
Berber-Tinoco, 510 F.3d 1083, 1087 (9th Cir. 2007).

1   in the guise of an evidentiary hearing simply because they would like to acquire more facts.

2          As the government has cited, the Ninth Circuit recognizes the doctrine of

3   collective knowledge in situations, such as here, where the observing officer with knowledge of

4   all the facts necessary for reasonable suspicion (or probable cause) communicates, or causes to be

5   communicated, this fact to another officer who then makes the stop.  United States v. Ramirez,

6   473 F.3d 1026, 1033 (9th Cir. 2007).  Thus, if Officer Mahaffy was in possession of sufficient

7   facts, the additional fact that he did not make the stop is inconsequential.

8          In light of the reasonable suspicion standard – specific facts and legitimate

9   inferences – the court finds that the stop, assuming the seizure took place upon activation of

10  emergency lights, see United States v. Washington, 490 F.3d 765, 770 (9th Cir. 2007), but see

11  California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547 (1991) (discussed below), was justified by

12  the observations of Officer Mahaffy.  A primary job of a law enforcement patrol officer is to look

13  for crime, whereas no such duty attaches to the ordinary citizen.  Thus, Officer Mahaffy saw the

14  drinking of beverages from bottles, which at one point were "toasted" as is a common practice

15  with alcoholic beverages.  He saw possibly furtive movements regarding the disposing and

16  acquisition of the bottles.  Although it is certainly possible that all of the things seen by Officer

17  Mahaffy could have been the completely innocent drinking of soda or energy drinks or the like,

18  the fact that one or more innocent inferences is possible does not negate the fact that an inference

19  of alcoholic beverage consumption was completely reasonable as well.  Common sense informs

20  in these circumstances that a request to have on-duty law enforcement initiate an investigatory

21  stop of the criminal act of drinking while driving (implicating a number of violations of the

22  vehicle code) was manifestly reasonable.

23         The second and third scenarios are justified by the Hodari D. case cited above, i.e,

24  there was not a seizure until Crowley actually stopped the vehicle.  In Hodari D., the Supreme

25  Court held that a show of force or authority by a police officer commanding that a person stop

26  was not a seizure unless it was complied with.  In the Fourth Amendment context, the word

1   '"seizure'" "does not remotely apply, however, to the prospect of a policemen yelling 'Stop, in

2   the name of the law!' at a fleeing form that continues to flee."  Hodari D, 499 U.S. at 626, 111

3   S.Ct. At 1550.  A juvenile who ran after a police car stopped and officers gave chase was not

4   "seized" until the fleeing juvenile was tackled.  Thus, as long as the arresting officer here had a

5   reasonable suspicion that Crowley was not stopping in conformance with the obvious implication

6   to stop occasioned by lights and sirens, Crowley and Stoner were not seized until Crowley finally

7   determined to stop.

8            But argue the defendants – Officer Mahaffy, who did not see all things associated

9   with the initial attempt to stop Crowley, believed that Crowley stopped within a reasonable time.

10  See the Brady letter given to the defense and presented at hearing.  Again, the argument misses

11  the "reasonable suspicion" point.  Unless the arresting officer could not have reasonably

12  suspicioned that Crowly was not obeying the direction to pull over, the fact that defendants have

13  some evidence to support a counter conclusion does not necessarily invalidate the arresting

14  officer's conclusion.  Given the facts presented by Crowley, it was entirely reasonable, although

15  possibly not ultimately correct, for the arresting officer to believe that Crowley was in the initial

16  stages of attempting to flee, or going through the mental-tug-of-war in assessing his situation.

17  On the record presented to the undersigned by Crowley, and not supplemented by any other

18  factual proffer presented by the defense,[5] the court would find by a preponderance of the

19  evidence that Crowley did not commence stopping in compliance with the direction to do so.  It

20  follows that the court is justified in finding that a seizure did not take place until Crowley finally

21  did stop his vehicle at the BX.

22           This finding has dispositive implications under scenarios 2 and 3.  If the seizure

23  did not take place until the BX stop, the totality of the circumstances adds the possible flight,

24  _____

25      [5] Indeed, although the court cannot presently rely upon Crowley's later admissions that
    he knew he was not stopping when directed, the undersigned knows full well why no other
26  defense evidence supplementations took place.

9

1  confusion, or indecision of Crowley into the "maybe intoxicated" column.  It certainly adds to

2  Officer Mahaffy's conclusions to the point where it cannot be reasonably asserted that a

3  "reasonable suspicion" of driving under the influence or with open containers was not present.

4          Moreover, the suspicioned flight itself was a crime.  See Cal. Vehicle Code §

5  2800.1, and possibly 18 U.S.C. § 111.  As was conceded by counsel for Stoner, and is beyond

6  debate, an initial, invalid Terry stop or arrest does not give one license to commit crimes.  See

7  e.g., Cal. Penal Code 834(a).[6]  Accordingly, evidence procured as a result of a post-Terry crime is

8  not suppressed regardless of the initial impropriety of the Terry stop.  United States v. Thomas,

9  512 F.3d 383, 387 (7th Cir. 2008) ("Because we find that Thomas was searched pursuant to a

10  lawful arrest for resisting arrest, it is irrelevant whether the pat-down search was justified under

11  Terry.").  Under the facts presented to the undersigned, the arresting officer did have probable

12  cause to believe that Crowley was willfully evading him.  Again, assuming the first activation of

13  lights and sirens was the "seizure" at issue, the post-seizure crime of eluding the officer, for

14  however short a time, is independently analyzed in the suppression context.  And, the obvious

15  intoxication of Crowley and Stoner on first personal contact by the arresting officer, acquired by

16  the justified and independent failure-to-stop crime, permits all the intoxication evidence to come

17  into play.

18          Under any of the scenarios presented by the evidence, the motions to suppress by

19  both defendants are denied.

20      B.  Motion to Dismiss

21          Defendant Stoner presents the following facts which the government does not

22  dispute:

23         When I got out of the vehicle SSGT Trojanowki (sic) asked me to do a search on
       the female suspect.  I walked over to the passenger side of the suspect's car and

24         asked her to step out.  SSGT Trojanowki (sic) and I then had to assist the female

25

26      [6]  Whether one has a right to resist an arrest or Terry stop because the officer is utilizing
excessive force, or otherwise acting in an unlawfully  provocative manner, is discussed below.

suspect out of the vehicle.  I then notice (sic) that the female smelled of alcohol, and her eyes were glossy (sic) and red.  SSGT Trojanwki (sic) then asked the female if we could perform a search on her, and she agreed to let us.  I began the search by running my fingers through her hair.  I then moved down the collarbone area of her shirt and checked her collar for any concealed item (sic); I turned up with no findings.  I continued to search by patting down the female suspects (sic) right arm on the out side (sic) and then running hand (sic) up the inside of her right arm to her armpit.  I patted from her armpit down to the right side of her hip.  I then began pat her (sic) back from the bottom of her spine to the top of her shoulder blade moving from right to left.  When I reached her left shoulder blade I patted down the out side (sic) of her left arm, I patted (sic - no period at the end of the sentence) the inside of her left arm till (sic) I reached her armpit.  I searched from her armpit down her left side till (sic) I reached her hips.  I then ask the female (sic) to lean back on me for support so that I could search the front part of her body, and still keep here (sic) hand restrained behind her at the same time.  She complied.  I continued by starting at the top of her shoulders moving from right to left patting her till (sic) I reached the bottom of breast (sic).  I began to use the bra rolling technique to check for and concealed items (sic).  When I got the roll passed (sic) her left breast the suspect began to yell "No, no."  She pulled her right hand free, and grabbed the back of my neck.  I then was able to get free, and gain control of her arm again.  I told the female to clam down (sic); she continued to struggle to get her hands free.  SSGT Trojanowki (sic) as my over watch notice (sic) I was have (sic) some trouble with the female and assisted me in moving her over to the hood of his vehicle.  SSGT Trojanowki told the female if she did not clam down (sic) we would place her in cuffs.  The female continued to fight us as we tried to get her hands behind her back.  SSGT Trojanoski and I removed the female from the hood of the car and took her down to the ground.  SSGT Trojanowki (sic) gain control (sic) of the female by putting her in control hold (sic).  I then placed my knee on her lower back to stop her from rolling over.  I pulled out my hand cuffs (sic) and put on her left wrist (sic) and then her right.  I secured the cuffs by putting the safety lock on.  Once the cuffs were on the female, SSGT Trojanowki (sic) and I helped her to her feet.  At that moment SRA Fisher and SSGT Duggin arrive to our location (sic).  SRA Fisher aids me (sic) in getting the female suspect in the patrol car, and putting on her seat belt.  When we came back in the area where the incident took place SSGT Trojanowki (sic) and SSGT Duggin were giving the male suspect (the driver) a sobriety test.  SSGT Duggin places (sic) the male in hand cuffs (sic) for transport to law enforcement desk.  SRA Martinez and I secured the male in our vehicle, and transported him to law enforcement desk. /// end of statement ///

Motion to Suppress/Dismiss at 4-5.

        First, the undersigned pauses to state what this motion is not.  It is not a motion to determine whether Stoner was justified in resisting a search in which excessive force or provocative acts justified such resistance.  Such a claim is an affirmative defense which will be heard, if at all, at trial, and given to the jury with appropriate instructions.  See United States v. Span, 970 F.2d 573 (9th Cir. 1992) and the followup 28 U.S.C. § 2255 motion, United States v.

1    Span, 75 F.3d 1383 (9th Cir. 1996) (defining when resistance to law enforcement is authorized

2    and when it is not, and jury instructions which are permissible for this affirmative defense).

3          The motion is one for dismissal based on outrageous government conduct.  This

4    motion is one addressed to the court only, United States v. Mosley, 965 F.2d 906, 909 (fn3) (10th

5    Cir. 1992), and requires a showing by defendant Stoner that the government conduct was so

6    excessive, intolerable and offensive as to violate a universal sense of justice.  United States v.

7    McClelland, 72 F.3d 717, 721 (9th Cir. 1995); United States v. Luttrell, 889 F.2d 806, 811 (9th

8    Cir. 1989) amended on other grounds 923 F.2d 764 (9th Cir. 1991) (en banc).  Negligence or poor

9    judgment is insufficient to show outrageous government conduct.  United States v. Wiley, 794

10    F.2d 514, 515 (9th Cir. 1986).

11          The undersigned defers final ruling on the motion to dismiss and will consider the

12    facts elicited by the parties at trial.[7]  The court does so because a fuller exposition of the facts

13    will aid resolution of the motion.  Moreover, the facts concerning the affirmative defense which

14    may well be raised by defendant Stoner are the very same facts upon which the court will base its

15    ultimate ruling.

16          The court gives some tentative impressions on the motion which may aid the

17    parties in terms of the evidence to be produced at trial.  There is not much doubt from the facts

18    presented thus far that the method of search was over-intrusive, and hence unreasonable.  At the

19    time the search was initiated, Stoner was not under arrest, so that a search incident to arrest is out

20    of the equation.  Rather, as set forth in the facts, the search was initiated for generic officer safety

21    reason, i.e., a Terry rationale.[8]  The court is unaware from any authority provided by the parties

22    that a Terry pat-down search, on a stop initiated for traffic/vehicle law investigation, may include

23

24          [7]  The court in its discretion and for good cause may defer ruling on a motion to dismiss pending trial where the facts upon which the motion are made are intertwined with the facts to be

25    elicited at trial. Fed. R. Crim. P. 12(d); United States v. Williams, 644 F.2d 950, 952-953 (2nd Cir. 1981).  See also United States v. Kaplan, 554 F.2d 958, 970 (fn. 7) 1977).

26          [8]  Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868 (1968).

1   a fingering through hair, or "bra rolls" where the person to be searched (a passenger in this case)

2   had to lean back on the officer with a hand restrained behind her back.  This is especially so

3   given the number of officers on the scene at the time, and the necessarily lessened sense of

4   officer danger, if it were really present at all.  While the court understands that generally an

5   intoxicated person may be more of a danger to others than a sober person, nothing in the facts

6   before the undersigned suggests that the officers on the scene witnessed any actions on the part of

7   Stoner at the time the search was initiated which would have given a reasonable person concern

8   for safety of others vis-a-vis Stoner.  Officers are to exercise some judgment on the scene as to

9   the realistic, potential, as opposed to simply theoretical, dangers existing.

10          The government argues that Stoner consented to the search , but the assertion begs

11  the real issue – consented to *what*.  Certainly, even the government would not argue that Stoner

12  had consented to an in-public view strip search.  What is reasonable to infer under the

13  circumstances is that, assuming that she could consent at all, she consented to the same type of

14  <u>Terry</u> pat-down search as had just been administered to Crowley, which did not seemingly

15  include "underwear rolls."  That is, Crowley appears to have been administered a generic type

16  pat-down search.

17          In addition, the court is unsure from the fact description whether the search was in

18  part, inside the clothing of Stoner, i.e, skin to skin, or glove to skin.  Moreover, the rapidity of

19  events in the chronology needs to be supplemented with more facts.

20          <u>Terry</u> stops and the restrictions/methodology used in such a stop depend on the

21  circumstances of the stop.  There is no one size fits all procedure.  <u>See</u> <u>United States v. Luckett</u>,

22  484 F.2d 89, 90-91 (9th Cir.1973) (noting that the Fourth Amendment requires the length and

23  scope of such a stop be "strictly tied to and justified by the circumstances which rendered its

24  initiation permissible").  While the court can state at this time based on the facts presented that

25  the "pat-down" of Stoner was in fact much more than was reasonable under the circumstances,

26  the question of outrageous conduct cannot be decided without additional facts.

1  *Conclusion*

2          The motions to suppress of both defendants are denied.  A ruling on defendant

3  Stoner's motion to dismiss on account of outrageous government conduct is deferred until trial.

4          *The parties are to meet and confer immediately, and contact the undersigned's*

5  *clerk forthwith, for a date for jury trial keeping in mind the constraints of the Speedy Trial Act.*

6  DATED: 03/12/08

                                    /s/ Gregory G. Hollows

7  _____

8                                    UNITED STATES MAGISTRATE JUDGE

9  crowley.ord2

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                    14